FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 2 3 2026

KEVIN P WEIMER, Clerk
By: _____ Deputy Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**CRYSTAL DEESE,**
Plaintiff,

v.

**ANNA KENNISON;**
**KREWSON BETTS, LLC;** and
**CYNTHIA M. KREWSON,**
**in her individual capacity,**
Defendants.

Civil Action No.

_____

**1:26-CV-2290**

### COMPLAINT FOR ADA INTERFERENCE, COERCION, INTIMIDATION, THREATS, AND RETALIATION
### (42 U.S.C. § 12203; 28 C.F.R. § 35.134)

Plaintiff Crystal Deese, proceeding pro se, files this Complaint against Defendants

and alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action arising under the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12101 et seq., specifically 42 U.S.C. § 12203.

2. Plaintiff brings this action because Defendants retaliated against Plaintiff and

coerced, intimidated, threatened, and interfered with Plaintiff after Plaintiff

aided, assisted, and encouraged James E. Rogers, III in seeking and exercising

disability-related rights protected by the ADA in connection with state-court

proceedings, including a request for a disability-related procedural

1

accommodation so that he could meaningfully participate in and benefit from those proceedings.

3. Title II of the ADA protects qualified individuals with disabilities in the services, programs, and activities of public entities, including judicial proceedings, and Title V of the ADA expressly prohibits retaliation, coercion, intimidation, threats, and interference against individuals who seek, exercise, or assist others in seeking or exercising those disability-related rights.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law, including 42 U.S.C. § 12203(a), (b), and (c).

5. The ADA-protected rights at issue arise in connection with Title II of the ADA, 42 U.S.C. § 12132, which guarantees qualified individuals with disabilities an equal opportunity to participate in and benefit from the services, programs, and activities of public entities, including state-court proceedings. Plaintiff brings claims under 42 U.S.C. § 12203(a) and (b), and, pursuant to 42 U.S.C. § 12203(c), seeks the remedies and procedures available for violations connected to Title II rights.

6. Defendants are private actors, not public entities. Plaintiff does not assert direct Title II liability against Defendants. Plaintiff alleges instead that Defendants retaliated against Plaintiff and coerced, intimidated, threatened, and interfered

2

with Plaintiff because Plaintiff aided or encouraged Rogers in the exercise or enjoyment of ADA-protected rights arising in connection with state-court proceedings.

7. This Court has authority to grant declaratory relief and further necessary or proper relief under 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to this action occurred in this District.

## III. PARTIES

9. Plaintiff Crystal Deese is a resident of Georgia.

10. Defendant Anna Kennison is a resident of Georgia and a litigant in the related Cherokee County proceedings.

11. Defendant Krewson Betts, LLC is a Georgia law firm with its principal office in Cherokee County, Georgia.

12. Defendant Cynthia M. Krewson is a Georgia attorney licensed to practice in Georgia.

13. At all relevant times, Defendant Cynthia M. Krewson acted within the course and scope of her work for Krewson Betts, LLC and used the firm's name,

3

letterhead, and litigation authority in carrying out the conduct described below.

14. At all relevant times, Kennison acted personally and through counsel. Krewson Betts, LLC acted through Krewson in firm communications and firm-filed pleadings. Each Defendant is alleged to be liable only for conduct that he, she, or it personally committed, directed, authorized, ratified, or carried out through an agent acting within the scope of that relationship.

## IV. FACTUAL ALLEGATIONS

### A. James Rogers's Disability and Plaintiff's Support Role

15. At all relevant times, James E. Rogers, III had a documented cognitive disability, including a record of a mental impairment, that substantially limited major life activities including learning, reading, concentrating, thinking, communicating, and understanding legal proceedings without reasonable procedural and comprehension support.

16. At all relevant times, Rogers was a qualified individual with a disability and was otherwise eligible to participate as a litigant in the Cherokee County proceedings.

4

17. State-court proceedings are public services, programs, or activities for which qualified individuals with disabilities must be afforded an equal opportunity to participate in and benefit from the proceeding.

18. On August 20, 2024, while Rogers was represented by counsel, he executed and notarized a written waiver expressly authorizing his attorneys and staff to communicate with Plaintiff, reflecting his reliance on Plaintiff to help navigate and communicate about legal matters.

19. Plaintiff's support of Rogers did not begin in 2025. For approximately four years before the May 30, 2025 cease-and-desist letter, Plaintiff had assisted Rogers in the background with understanding legal communications, organizing information, and helping him communicate with counsel and the court concerning his own positions.

20. Plaintiff's role was limited to helping Rogers understand filings, organize facts, review issues, and communicate Rogers's own positions in court-related proceedings.

21. Plaintiff did not hold herself out as Rogers's attorney, did not receive compensation as counsel, and did not seek to replace Rogers's own judgment or decision-making authority.

22. During the period in which Rogers was represented by counsel, Plaintiff's involvement was accepted at Rogers's request, including through Rogers's

August 20, 2024, executed and notarized waiver authorizing his attorneys and staff to communicate with Plaintiff.

23. After Rogers became self-represented because of financial exhaustion, Plaintiff's support became more visible because Rogers needed increased assistance to understand filings, prepare materials, and communicate his own positions, and had no other meaningful support then available short of renewed counsel.

24. Plaintiff was never subpoenaed for testimony during the years in which she remained in the background and supported Rogers while he was represented by counsel. The first subpoena directed to Plaintiff arose only after Defendants began accusing Plaintiff of unauthorized practice of law and seeking sanctions and referral against her.

## B. Extra-Judicial Cease-and-Desist Directed to Plaintiff as a Non-Party

25. On May 30, 2025, Krewson, acting on firm letterhead on behalf of Krewson Betts, LLC and for client Anna Kennison, sent Plaintiff an extra-judicial cease-and-desist demand concerning the Cherokee County case styled Rogers v. Kennison. A true and correct copy of that letter is attached hereto as Exhibit 1.

26. The letter was directed to Plaintiff, a non-party, and demanded that she immediately cease "any and all further communications" with Kennison "in

any manner whatsoever," including communications through Our Family Wizard, whether direct or indirect through a third party.

27. The letter copied Rogers's then-counsel, confirming that Rogers remained represented at that time and that counsel—not Plaintiff—controlled the litigation.

28. The letter threatened that any further contact would cause Kennison to seek "all available remedies" for alleged interference with custody and pending litigation.

29. Kennison, as the identified client and beneficiary of the demand, authorized, directed, ratified, caused, or benefited from that communication.

30. Plaintiff responded the same day and stated that she had not communicated with Kennison directly, that she was not a party to the case, and that she was assisting Rogers because of documented learning and comprehension difficulties. A true and correct copy of that response and the reply described below are attached hereto as Exhibit 2.

31. Plaintiff further stated that the court was aware Rogers had difficulty understanding proceedings and that Plaintiff's assistance was lawful support.

32. Later that same day, Krewson's office replied: "This is simple. Please do not communicate with Ms. Kennison."

## C. Withdrawal of Counsel, Written Notice of Disability-Based Reliance, Request for Disability-Related Procedural Accommodation, and Escalation

33. On July 1, 2025, Kennison, through Krewson, filed an Application for Contempt Citation, for Sanctions, and for Other Relief in the Cherokee County action.

34. On July 29, 2025, the Cherokee County Superior Court entered an order granting withdrawal of Rogers's counsel.

35. On July 31, 2025, after counsel withdrew, Krewson emailed Rogers acknowledging that he was then self-represented and could communicate directly with her.

36. Rogers responded in writing the same day and requested that Plaintiff be included on communications, stating: "Due to my disability, I rely on her help to read, understand, and respond appropriately." A true and correct copy of that email chain is attached hereto as Exhibit 3.

37. Krewson replied: "Yes, certainly. Thank you letting me know. I copied her on this response."

38. On July 31, 2025, Plaintiff filed a Verified Motion for Appointment of Next Friend in Cherokee County Superior Court.

39. The motion sought a narrow disability-related procedural accommodation within the state-court proceeding so that Rogers could meaningfully

8

participate notwithstanding his cognitive limitations while preserving Rogers's own control over his claims, positions, and decisions; it did not seek any substantive custody advantage in the underlying case.

40. The motion alleged that Rogers had a documented cognitive disability, longstanding reading-comprehension and communication limitations, had exhausted his financial means to retain counsel, and required accommodation-level support to understand court documents, maintain records, and communicate his own positions.

41. On August 1, 2025, after receiving Rogers's written disability-based request, Krewson copied Plaintiff on further case-related communications, including settlement and child-support-related materials. A true and correct copy of that email chain is attached hereto as Exhibit 3.

42. Also on August 1, 2025, after the Verified Motion for Appointment of Next Friend was filed, Krewson, on behalf of Kennison, advised the clerk that the contempt and attorney-fee matters were being removed from the calendar.

43. On August 6, 2025, however, Krewson, on behalf of Kennison, filed a new Rule Nisi for the September 30, 2025 final hearing that again placed contempt, sanctions, and attorney-fee matters on calendar.

**D. August 28, 2025 Escalation: UPL Accusations, Sanctions, Fees, and Bar Referral Request**

9

44. On August 28, 2025, Krewson, acting on behalf of Kennison and through firm-filed pleadings submitted in the name of Krewson Betts, LLC, filed a Response to Motion to Supplement the Record. A true and correct copy of the selected pages reflecting the statements described in Paragraphs 45 through 47 is attached hereto as Exhibit 4.

45. In that filing, Krewson asserted that Plaintiff had been "admonished on more than one occasion by this Court" regarding unauthorized practice of law.

46. In that same filing, Krewson alleged that Plaintiff was engaging in unauthorized practice of law, stated that such conduct was sanctionable and punishable as a misdemeanor, requested sanctions against Plaintiff, and asked the court to render an opinion as to whether Plaintiff's conduct should be referred to the State Bar of Georgia.

47. In that same filing, Krewson further alleged: "Respondent has reason to believe that Ms. Deese's improper conduct before this Court is supported by, encouraged by, and perpetuated by Mr. Rogers."

48. Also on August 28, 2025, Krewson, again on behalf of Kennison and through firm-filed pleadings submitted in the name of Krewson Betts, LLC, filed a Response and Objection to the Verified Motion for Appointment of Next Friend. A true and correct copy of the selected pages reflecting the statements described in Paragraphs 49 through 50 is attached hereto as Exhibit 5.

49. In that filing, Krewson argued that Plaintiff lacked standing, accused Plaintiff of seeking permission to practice law without a license, requested sanctions against Plaintiff, and sought attorney's fees and expenses.

50. In that filing, Krewson also acknowledged that Rogers had "the support of his sister for the duration of this litigation."

51. These accusations were embedded in filings within Rogers's case rather than raised in a separate motion directed at Plaintiff, who was not joined as a party, named as a respondent, or afforded an ordinary procedural vehicle to respond on her own behalf.

52. Plaintiff is unaware of any written order, transcripted ruling, or adjudication finding that Plaintiff engaged in unauthorized practice of law or formally admonishing Plaintiff as Krewson claimed in the August 28, 2025 filing.

53. Plaintiff does not seek review of any state-court merits ruling. The allegations concerning Defendants' in-court accusations are pleaded as evidence of retaliatory purpose, knowledge, and escalation of collateral pressure against Plaintiff after disability-related assistance was disclosed.

54. To the contrary, during a prior contempt proceeding at which Rogers appeared pro se, the court permitted Plaintiff to sit with Rogers and assist him because he was having difficulty reading and comprehending the evidence being presented.

55. During that same proceeding, when Kennison gestured toward Plaintiff and Rogers as if complaining about their conduct, the court responded in substance that they were not doing anything improper, that if they were the court would address it, and that the court was in control of its courtroom.

56. Plaintiff does not challenge Defendants' right to advocate zealously, contest motions, or litigate disputed issues in court. Plaintiff challenges the use of extra-judicial threats, non-party-targeted sanctions and referral demands, defective or irregular process, and post-judgment continuation of collateral pressure directed at Plaintiff because she aided or encouraged disability-related access rights protected by federal law.

## E. Subpoena Directed to Plaintiff and Forced Retention of Counsel

57. On August 28, 2025, Krewson filed a Notice of Serving Witness Subpoena and Certificate of Service stating that a witness subpoena had been served on Plaintiff by certified mail and by statutory electronic service. A true and correct copy of the notice and subpoena described in Paragraph 58 is attached hereto as Exhibit 6.

58. The subpoena purported to command Plaintiff to appear as a witness on September 30, 2025, in the Cherokee County action. The subpoena served on Plaintiff omitted the hearing time.

12

59. On September 3, 2025, after receiving notice of the subpoena, Plaintiff requested clarification regarding the intended areas of testimony. A true and correct copy of the email chain described in Paragraph 60 is attached hereto as Exhibit 7.

60. Krewson responded that Plaintiff would be asked to testify regarding facts within her personal knowledge, "including" the Petition for Appointment of Next Friend, and acknowledged that the previously sent subpoena did not include the hearing time. Krewson stated that an amended witness subpoena would be mailed.

61. Plaintiff did not receive any amended subpoena by mail.

62. The available certified-mail materials do not establish completed mail service of a subpoena on Plaintiff. The mailing receipt reflected Plaintiff's Ball Ground address, but USPS tracking for the same mailing reflected delivery "to agent" and left with an individual in Canton, Georgia 30115 rather than at Plaintiff's Ball Ground address. A true and correct copy of the USPS tracking record is attached hereto as Exhibit 8.

63. Plaintiff has not located a return receipt bearing Plaintiff's signature or otherwise establishing delivery to Plaintiff or to a valid authorized agent at Plaintiff's address.

64. After receiving the subpoena and facing the UPL, sanctions, fees, and referral accusations embedded in Defendants' filings, Plaintiff was forced to retain counsel to protect her own interests.

65. By targeting Plaintiff—the person providing disability-related comprehension, communication, and accommodation support to Rogers—Defendants materially burdened and deterred the practical availability of that support and left no realistic means of preserving Rogers's equal opportunity to participate in and benefit from the court proceeding short of retained counsel.

66. Plaintiff and her husband were compelled to obtain a HELOC on their residence to fund counsel for both Plaintiff and Rogers, totaling approximately $12,000, including approximately $4,000 for Plaintiff's counsel and approximately $8,000 for renewed counsel for Rogers.

67. On September 24, 2025, after counsel had again been retained for Rogers and Plaintiff had retained counsel, Plaintiff confirmed in writing that Next Friend status was no longer needed because Rogers had counsel again.

68. The need for Next Friend relief was therefore temporary and tied to Rogers's period of self-representation and disability-related need for procedural and comprehension support.

69. On September 30, 2025, the underlying Cherokee County case between Rogers and Kennison was resolved by entry of a Final Consent Order between those parties.

70. Plaintiff was not a signatory to that order, was not a party to that settlement, and was not ultimately examined on the subpoenaed testimony before the underlying case was resolved.

## F. Post-Judgment Continuation and Ongoing Threat of Retaliation and Interference

71. The targeting of Plaintiff did not end when the 2025 case was resolved.

72. In a later stalking proceeding filed against Rogers, Kennison sought ex parte relief and, in materials associated with that request, specifically sought restraints preventing direct or indirect contact with Petitioner and her immediate family, "especially through Crystal Deese," even though Plaintiff was not the respondent in that proceeding. A true and correct copy of the selected page reflecting that requested language is attached hereto as Exhibit 9.

73. The standard stalking-order forms already allowed restraints against direct or indirect contact by the respondent, yet Plaintiff was nevertheless singled out by name in requested communication restraints.

74. On January 22, 2026, after hearing, the Ex Parte Temporary Protective Order was dismissed and dissolved. A true and correct copy of the order dismissing

and dissolving that Ex Parte Temporary Protective Order is attached hereto as Exhibit 10.

75. On January 27, 2026, Kennison filed an amended emergency modification and contempt action alleging that Rogers "suffers from disabilities" and that his unspecified cognitive impairments adversely affect his judgment and parenting ability, invoking Rogers's disability substantively to support adverse custody and contempt relief.

76. On February 5, 2026, Rogers moved for judicial estoppel and a motion in limine, asserting that he had a documented cognitive disability, required procedural support for meaningful participation in court, and that Kennison had previously denied the legal significance of that same disability when such support was sought in 2025.

77. On February 20, 2026, Kennison, through Krewson, responded that Rogers's motion was brought for the sole purpose of "harassing and intimidating" Kennison, asserted that the prior Next Friend accommodation request was res judicata, and stated that it was not at issue in the new litigation, while continuing to rely on Rogers's cognitive disabilities substantively in support of contempt and modification allegations.

78. Defendants' contemporaneous filings thus treated Rogers's disability as legitimate and litigation-relevant when used against him, while characterizing

requests for disability-related procedural support and access as improper, sanctionable, and subject to collateral consequences.

79. On April 8, 2026, Plaintiff received a letter from the State Bar of Georgia concerning a complaint and a possible unauthorized-practice-of-law matter arising from the same disability-related support conduct at issue in this action. A true and correct copy of that letter is attached hereto as Exhibit 11.

80. On information and belief, the State Bar complaint referenced in Paragraph 79 was filed by Defendant Anna Kennison. In a subsequent conversation, a State Bar investigator informed Plaintiff that Kennison had filed the complaint, further demonstrating that the targeting of Plaintiff did not end with resolution of the underlying custody case.

81. These post-judgment acts show that the challenged conduct did not end with the resolution of the 2025 action, that the same parties remain in active or recurring litigation settings, and that the threat of renewed retaliation, coercion, intimidation, threats, and interference directed at Plaintiff because of disability-related assistance is real, concrete, and ongoing.

## G. Harm to Plaintiff

82. As a direct and proximate result of Defendants' conduct, Plaintiff incurred substantial litigation-related expense and financial strain, including the need to obtain a HELOC to fund legal counsel for both Plaintiff and Rogers.

17

83. Defendants' conduct imposed and continues to impose burdens not fully compensable by money damages alone, including deterrence of protected assistance, disruption of Plaintiff's ability to continue providing disability-related support, exposure to renewed collateral proceedings and process-based burdens, and the need to alter conduct to avoid further targeting.

84. Defendants' conduct would deter a reasonable person of ordinary firmness from continuing to provide disability-related assistance in court proceedings.

85. Absent prospective relief, Plaintiff remains at risk of further retaliatory, coercive, intimidating, threatening, and interfering acts arising from the same protected assistance, including collateral complaints, sanctions demands, and process-based burdens directed at Plaintiff as a non-party or support person.

86. Plaintiff seeks declaratory relief, narrowly tailored injunctive relief, nominal damages, and compensatory damages limited to proven economic loss.

## COUNT I
## ADA INTERFERENCE, COERCION, INTIMIDATION, AND THREATS
42 U.S.C. § 12203(b); 28 C.F.R. § 35.134(b)

87. Plaintiff realleges and incorporates by reference Paragraphs 1 through 86 as though fully set forth herein.

88. Plaintiff aided and encouraged Rogers in the exercise and enjoyment of rights protected by the ADA.

89. Those rights included the right to seek and receive disability-related procedural accommodations and other Title II access protections in connection with state-court proceedings so that Rogers could meaningfully participate in and benefit from those proceedings.

90. Defendants knew of Plaintiff's support role and of Rogers's written statement that he relied on Plaintiff because of disability to read, understand, and respond appropriately.

91. After learning of that assistance, Defendants directed collateral pressure at Plaintiff, including extra-judicial threats, non-party-targeted sanctions and fee demands, referral requests, subpoena-related burdens, and the post-judgment continuation of personally targeted process.

92. This conduct was directed at Plaintiff because she aided or encouraged Rogers in the exercise or enjoyment of ADA-protected rights and materially interfered with the practical availability of that assistance.

93. Defendants thereby violated 42 U.S.C. § 12203(b) and 28 C.F.R. § 35.134(b).

**COUNT II**
**ADA RETALIATION**
42 U.S.C. § 12203(a); 28 C.F.R. § 35.134(a)

94. Plaintiff realleges and incorporates by reference Paragraphs 1 through 86 as though fully set forth herein.

19

95. Plaintiff engaged in activity protected by the ADA by assisting Rogers in seeking a disability-related procedural accommodation and other access protections from a public entity so that Rogers could meaningfully participate in and benefit from the Cherokee County proceedings.

96. Plaintiff also engaged in protected activity by opposing conduct she understood to burden or deter Rogers's disability-related access rights.

97. Defendants knew of Plaintiff's protected activity, including through Rogers's written communication stating that he relied on Plaintiff's help because of disability and through Defendants' express acknowledgment of Plaintiff's support role.

98. Defendants nevertheless subjected Plaintiff to adverse action because of that protected activity, including by attacking the accommodation request as improper, seeking sanctions and fees against Plaintiff as a non-party, and escalating collateral pressure after the request was made.

99. Defendants further engaged in retaliatory conduct by directing extra-judicial threats toward Plaintiff, using unauthorized-practice accusations as collateral pressure, requesting referral to the State Bar of Georgia, imposing subpoena-related burdens, and continuing personally targeted legal process after resolution of the underlying case.

20

100. Defendants' conduct would deter a reasonable person of ordinary firmness from engaging in or continuing to support disability-related accommodation or access requests in court proceedings.

101. Defendants thereby violated 42 U.S.C. § 12203(a) and 28 C.F.R. § 35.134(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Declare that Defendants violated 42 U.S.C. § 12203 and 28 C.F.R. § 35.134 by retaliating against Plaintiff and by coercing, intimidating, threatening, and interfering with Plaintiff because of the disability-related assistance alleged in this Complaint;

C. Award narrowly tailored injunctive relief prohibiting Defendants from initiating, directing, or causing collateral, procedurally improper, non-party-targeted threats, complaints, sanctions demands, referral requests, or process-based burdens against Plaintiff because Plaintiff aided or encouraged disability-related rights protected by the ADA, while preserving lawful, good-faith party-directed advocacy conducted through ordinary procedures;

D. Award compensatory damages for proven economic loss and nominal damages to the extent permitted by law;

21

E. Award taxable costs and such litigation expenses as are recoverable by law;

F. Award pre-judgment and post-judgment interest as permitted by law; and

G. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 21 day of April, 2026.

Crystal Deese
Pro Se Plaintiff
245 Ridgecrest Drive
Ball Ground, GA 30107
770-855-4071
Cdeese1367@gmail.com

**EXHIBIT INDEX**

Pursuant to the Complaint, Plaintiff identifies the following exhibits attached hereto:

Exhibit 1

May 30, 2025 Notice to Cease and Desist

Exhibit 2

May 30, 2025 Response to Cease-and-Desist Letter

Exhibit 3

July 31 / August 1, 2025 Disability-Reliance Email Chain

Exhibit 4

Selected Pages from August 28, 2025 Response to Motion to Supplement the Record

Exhibit 5

Selected Pages from August 28, 2025 Response and Objection to Verified Motion for Appointment of Next Friend

Exhibit 6

August 28, 2025 Notice of Serving Witness Subpoena and Certificate of Service, with Subpoena

Exhibit 7

August 28 / September 3, 2025 Email Chain Regarding Service, Testimony Topics, and Missing Hearing Time

Exhibit 8

USPS Tracking Screenshot for Certified Mailing No. 70221670000302209355

Exhibit 9

Selected Page from January 2026 TPO Petition Reflecting Requested Language "Especially Through Crystal Deese"

Exhibit 10

Order Dismissing Ex Parte Temporary Protective Order

Exhibit 11

April 8, 2026 State Bar of Georgia Letter